**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

THE CONSTRUCTION INDUSTRY  )
RETIREMENT FUND OF ROCKFORD, )
ILLINOIS and THE CONSTRUCTION  )
INDUSTRY WELFARE FUND OF   )
ROCKFORD, ILLINOIS,      )  District Judge:
             )
     Plaintiffs,   )  Magistrate Judge:
             )
   vs.       )  Case No:
             )
PRECAST, LLC,      )
             )
     Defendant.  )
             )
             )

## <u>COMPLAINT</u>

   Plaintiffs, the Construction Industry Retirement Fund of Rockford, Illinois and

Construction Industry Welfare Fund of Rockford, Illinois, by their attorneys, WilliamsMcCarthyLLP,

bring this Complaint against Defendant, Precast, LLC.

### COUNT I
### (Failure to Pay Contributions to the Funds)

   1.  Jurisdiction in this cause is based upon §301 of the Labor-Management

Relations Act ("LMRA"), as amended.  29 U.S.C. § 185(a).

   2.  Jurisdiction in this cause is also based upon §502 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended.  29 U.S.C. § 1132.

   3.  Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) in this District because

The Construction Industry Retirement Fund of Rockford, Illinois and The Construction Industry

Welfare Fund of Rockford, Illinois is administered in Rockford, Illinois (collectively referred to as "the Funds" or "Plaintiffs").

4. The Funds are a multi-employer benefits plan withing the meaning of ERISA. It is established and maintained pursuant to its respective Agreements and Declarations of Trust in accordance with § 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have standing to sue pursuant to 29 U.S.C. § 1132(d)(1) and 29 U.S.C. § 185(a).

5. Defendant is engaged in the construction industry and is doing business within this geographic area, is an industry affecting interstate commerce, and is an employer within the meaning of § 3(5) of ERISA and § 301(a) of the LMRA.

6. International Union of Bricklayers and Allied Craftworkers, ("the Union") is a labor union which represents its members in negotiations and dealing with employers with respect to rates of pay, hours of work, and other conditions of employment.

7. On or about May 21, 2018, Defendant entered into a Memorandum of Agreement with the Union, evidence of which is attached hereto and made a part hereof as **Exhibit A.**

8. Under the terms of the Memorandum of Agreement, and the Collective Bargaining Agreement and Trust Agreements incorporated therein (the "Agreements"), Defendant is required to make contributions on behalf of its employees covered by the Agreements for pension benefits, health and welfare benefits, apprentice, working dues and to submit monthly remittance reports in which it identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

9.      Under the terms of the Agreements, contributions to the Funds are due on the 15th day of the month following the month hours are worked and are considered delinquent after the 25th day of the month.

10.      Under the terms of the Agreements, any employer who fails to make the contributions by the 25th day of the month after the work was performed is required to pay an additional amount of ten percent (10%) in liquidated damages, along with all legal fees and costs expended to collect the amounts owed.

11.      Under the terms of the Agreements to which Defendant is bound, Defendant is required to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12.      Beginning December 7, 2018 through August 21, 2019, Defendant has failed to report and/or pay contributions and/or liquidated damages owed to the Funds in violation of its contractual obligations and the obligations under State and Federal law (see **Exhibit B** attached hereto and made a part hereof).

13.      As a direct and proximate result of Defendant's failure to pay contributions, Defendant's employees are in jeopardy of losing their health and welfare eligibility and benefits.

14.      Defendant's actions in failing to make timely reports and contributions violate § 515 of ERISA, 29 U.S.C. § 1145, and §301 of the LMRA.  29 U.S.C. § 185.

15.      Pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), §301 of the LMRA, 29 U.S.C. § 185, and the terms of the Agreements, Defendant is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid and late contributions,

reasonable attorney's fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against Defendant, Precast, LLC, as follows:

(a)    Directing Defendant to submit its books and records to an audit on demand by Plaintiffs;

(b)    Entering judgment in a sum certain against Defendant on any amount shown due and owing pursuant to the audit, including unpaid contributions, liquidated damages, interest, audit costs and attorney's fees and costs;

(c)    Enjoining Defendant from violating the terms of the Agreements;

(d)    Awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate; and

(e)    Ordering Defendant to remain current in payment of all contributions to the Funds.

> THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS and THE CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, ILLINOIS, Plaintiffs,
> By:    WILLIAMSMcCARTHY, LLP
>
> /s/    Troy E. Haggestad
> Troy E. Haggestad (#06229384)
> WILLIAMSMcCARTHY, LLP
> 120 West State Street, Suite 400
> P.O. Box 219
> Rockford, IL 61105-0219
> 815/987-8900
> thaggestad@wilmac.com

# INTERNATIONAL PRECAST & PANEL AGREEMENT



between the

## International Union Of Bricklayers And Allied Craftworkers

10895

and

_Precast, LLC_

Ver. 04012016

EXHIBIT
A

# INTERNATIONAL PRECAST & PANEL AGREEMENT

between the

International Union of Bricklayers and Allied Craftworkers

and

_Precast, LLC_

Effective Date: _5-21-18_

To foster the principles of collective bargaining, to promote closer working relationships between the International Union of Bricklayers and Allied Craftworkers and its signatory contractors. to provide a peaceful means for the settlement of grievances and disputes, to eliminate the necessity for strikes and lockouts, to encourage precast concrete and masonry training programs, to promote safe working sites, to develop uniform working conditions, and to establish rates of wages, hours and conditions of employment, we, the International Union of Bricklayers and Allied Craftworkers, and _Precast, LLC_ (the signatory employer), do adopt the following Agreement as the basis of our relations.

The International Union of Bricklayers and Allied Craftworkers shall hereinafter be referred to as the "Union." Local Unions, District Councils and Conferences of the International Union of Bricklayers and Allied Craftworkers shall hereinafter be referred to as the "Local Union." The signatory employer shall hereinafter be referred to as the "Employer."

## ARTICLE I
### Duration

This Agreement, executed to be effective the _21D_ day of _May_ 20 _18_, shall remain in effect for three (3) years and shall automatically continue yearly thereafter unless notice of modification or termination is given by certified mail in writing by either party to the other not later than 60 days, and no more than 90 days prior to the expiration date or any anniversary date thereafter. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of this Agreement.

In the event notice of termination or modification is given as provided in the above pa
and an agreement on a new or modified agreement is not reached by the anniversary
individual signatory Employers and the Union agree to continue to work under the ter

2

Agreement on a day-to-day basis until such time that either a new agreement or an impasse is reached.

## ARTICLE II
### Scope, Work Assignments, Manpower, Training

A.    This Agreement shall be in effect within the boundaries of the United States and Canada and all possessions and territorial dependencies.

B.    The Employer agrees to assign to employees represented by the Union all work assignments which are contained in this Article.

C.    This Agreement covers all work assignments in the pre-assembly and complete installation of all precast concrete and artificial or natural masonry products of any size or dimension, whether set individually or in pre-assembled panels which may have metal or concrete backing, whether set with cement mortar, high strength adhesives or secured by bolting or welding to plates set in all types of concrete or attached to steel frame structures, whether set by hand or with any type of mechanical systems.

D.    Pre-assembly work assignments shall include, but not be limited to, the preparations of steel frames or precast concrete back up panels, the drilling of holes, cutting, fitting, and fastening of precast concrete and artificial and natural masonry product units to steel frames or back up precast by bolts, clip anchors, pins, including any welding as well as the complete application or installation of insulating, caulking and/or waterproofing materials. Employee wage and contribution rates and conditions of employment for pre-assembly work shall be negotiated separately between the Union and the Employer.

E.    Installation work assignments shall include, but not be limited to, unloading, selecting or shaking out of precast concrete and artificial and natural masonry products for erection, hooking on, signaling, laying out, cutting, fitting, bedding, landing, setting, leveling, plumbing, aligning, anchoring, installation of any steel clips, relief or support angles as well as the installation of metal grid or strut stone supports (including bolting and/or welding), cutting, grouting, patching, cleaning, and installation of gaskets or packing and caulking.

F.    In addition, all assignments mutually agreed upon between the Employer and the Union as well as all other work assignments on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

G.    The Union agrees to establish such training programs as are necessary to ensure that a full crew of trained personnel will be available when the Employer is ready to start a project. In order to make such training efforts successful and timely, the Employer agrees to furnish to the Union a schedule of its projects which contains job names, locations and starting dates with manpower tables which show crew needs throughout each project's various phases. The Union

agrees to check with the Local Union in the jobsite area to determine availability of sufficiently trained and experienced personnel to meet the project's needs.

H.    If sufficient jobsite local manpower is not available, the Union agrees to contact its locals in other areas to see if experienced manpower is available and if such Craftworkers are available to assist the Employer in relocating temporarily the number of additional Craftworkers needed for the Employer's project. If a sufficient number of Craftworkers cannot be located, the Union agrees to set up special training programs for whatever skills are required in order to develop the trained crew required to fulfill the Employer's work assignments.

### ARTICLE III
### Management Recognition and Rights

The Union hereby recognizes and acknowledges that the jobsite discipline is the responsibility of the Employer. Except as otherwise provided herein, the Employer shall have the right to hire, fire, suspend or discipline for just cause, direct the working force, and manage its business in accordance with its best judgment.

### ARTICLE IV
### Union Recognition, Union Security

A.    Union Recognition.    Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the Employees in the classification of work falling within the jurisdiction of the Union, as defined in Article II of this Agreement, and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the Employees in that bargaining unit, the Employer recognizes the Union, pursuant to section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union.

B.    Union Security.    No later than eight (8) days following the effective date of this Agreement, all present employees working under the terms of this Agreement must, as a condition of continued employment, be or become members of a Local Union; all employees hired after the effective date of this Agreement shall be or become and remain members of a Local Union no later than eight (8) days following the first day of their employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. Failure of any employee to comply with the provisions of this subsection shall, upon request of the applicable Local Union, result in the termination of such employee, provided that the Union has given the employee four (4) days notice that his/her obligation to make payment has not been met and that the delinquency renders him/her liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Local Union: (a) if he/she has reasonable grounds for believing that such membership was not available on the

4

same terms and conditions generally applicable to other members; or (b) if he/she has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership. This clause shall not be effective in those states prohibiting such Union Security, provided, however, that where an Agency Shop is lawful in such State, conformity therewith shall be a condition of employment in accordance with the conditions set forth in Section 8 of the National Labor Relations Act, as amended.

C. Union Access to Job. The BAC Principal Officer (or his/her designee) of the Local Union having jurisdiction over the jobsites shall have access to the Employer's jobsites at reasonable times to ensure that the provisions of this Agreement are observed.

## ARTICLE V
## Hours of Work, Local Steward

A. Eight (8) hours' work per day shall constitute a day's work. Forty (40) hours' work per week, Monday through Friday inclusive, shall constitute a week's work. Normal starting time shall be 8:00 a.m. Normal quitting time shall be 4:30 p.m. with a thirty (30) minute unpaid lunch break occurring in the middle of the shift. Normal starting and quitting time may be changed by mutual consent of the Employer and the Union. Shift work may be scheduled if required. The schedule of approved shifts which can be adopted by mutual consent of the Employer and the Union is contained as part of the Agreement Addendum A.

B. When more than one (1) shift is required, the shift schedule shall be established in accordance with the procedure contained in Paragraph A of this Article. Employees working on second shifts shall receive a twenty-five cents (.25) per hour additive and employees working on third shifts shall receive a fifty cent (.50) per hour additive. At least six (6) consecutive shifts shall be required to establish a shift operation. If shift schedules, other than those contained in the Agreement are required or must be established for a shorter duration, they may be established by a mutual agreement of the Union and the Employer.

C. All time worked before and after the established eight (8) hour work day, Monday through Friday and all time worked on Saturdays, shall be paid for at the overtime rate established in the jobsite Local Union's Collective Bargaining Agreement. All time worked on Sundays and the national holidays recognized in the jobsite Local Union's Collective Bargaining Agreement, shall be paid for at the double time rate.

D. A working steward shall be placed by the Local Union on each working shift to represent the Union on all jobs and shall not be discharged for fulfilling his/her duties. All disputes between the Employer and the employees shall first be taken up with the steward on the job who shall immediately notify the Local Union office of the existence of a dispute. In the event the steward leaves employment of the employer the Union shall place another steward on the job.

E.   The steward shall call time and keep a record of the names of all employees and the hours worked by each employee and shall make a report of those records to the jobsite Local Union.

## ARTICLE VI
### Key Employees

A.   It is understood and agreed by the Union and the Employer that the Employer shall maintain a stable and permanent workforce of key employees, designated as "Company Field Employees", who shall be defined for purposes of this Agreement as employees hired with the expectation that they shall be employed by the Employer on a continuous basis to the extent that work is available.

B.   It is further understood and agreed that the Employer shall, in addition to those employees described in Section A of this Article, employ local employees, who shall be defined for purposes of this Agreement as employees residing or normally employed in the territorial jurisdiction of the Local Union in which the jobsite is located who are employed on a project-by-project basis.

C.   The Employer agrees that within thirty (30) days from the execution of this Agreement it will furnish the Union with a signed statement listing its key employees, specifying their date of hire. The Employer shall notify the Union in writing of any additions to or deletions from this list within five (5) days of such change.

D.   All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provision of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

## ARTICLE VII
### Hiring of Workforce, Local Preference Apprentices

The Employer shall notify the BAC Principal Officer (or his/her designee) of the Local Union having jobsite jurisdiction upon being awarded a contract for a project located within the area covered by the Local Union.

A.   Prior to commencing work in an area, the Employer agrees to notify the Union and the Local Union in the area where the job is located and the Employer and the Local Union shall meet to discuss project requirements.

B.   The size of the crew required for any particular project during any phase of the work shall be determined by the Employer. There shall be no limit on production by workmen nor restriction on the full use of tools and equipment.

C.    If there are absentees at any time, work shall proceed without interruption or slowdown. The Employer shall promptly contact the Local Union having jobsite jurisdiction for replacements or additional manpower if required.

D.    The Union recognizes the specialized nature of work covered under this Agreement. Further, the Union agrees that a reasonable number of key employees, such as foremen and/or leadmen, may be transferred from one locality to another by the Employer.

E.    Hiring

    1.    The Union hereby recognizes and acknowledges the specialized nature of the work covered under this Agreement and agrees that the Employer shall be permitted to assign a reasonable number of key employees including foremen to each project.

    2.    The first hire shall be a Local Union steward. The next five (5) employees, including foremen and/or leadmen, may be selected from company field employees. Any additional employees may be selected alternately from the Local Union and company field employees. If sufficiently trained and experienced Craftworkers are not available through the jobsite Local Union, the Employer may transfer additional employees represented by BAC to work on the project, after receiving approval in writing from the International Union office.

    3.    The Local Union is recognized by the Employer as the source of employment referrals. The appropriate Local Union will be contacted and shall refer all applicants for employment to the project except as otherwise provided in this Agreement.

    4.    It is understood that the Employer shall have the right to determine the competency and qualifications of applicants referred by the Local Union. The selection of applicants for referral to jobs shall not be based on, or in any way affected by, union membership, bylaws, rules, regulation, constitutional provisions or any other aspect or obligation of union membership, policies or requirements.

F.    In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices is recognized and encouraged by the parties to this Agreement. The employer agrees to abide by the jobsite Local Union apprenticeship standards.

G.    All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of grievances and the final and binding resolution of disputes.

## ARTICLE VIII
### Wages and Contributions

A.　　Whenever the Employer participates directly in local negotiations, the Employer shall be affected by the events which occur during that process, including any economic action, and shall be bound to the terms of any collective bargaining agreement that is consummated from such negotiations, to the degree that such terms are not in conflict with the provisions of this Agreement.

B.　　Wherever the Employer performs work under this Agreement the following procedure will apply:

　　　　1.　　Prior to the commencement of work in an area where wages, benefit contributions and working conditions have been negotiated through bona fide collective bargaining, the Employer will be presented with such evidence by the Local Union and the Employer will abide by the wages, benefit contributions, and working conditions set forth in such agreement which are not in conflict with this Agreement.　The International Union will serve as the clearinghouse for all fringe payments made on all employees, including local hires, company field employees, and recruited employees from outside the jobsite jurisdiction.

　　　　　　　　a.　　Where the local agreement specifies that a portion of the total wage package is to be paid in the form of contributions to a trust or trusts which meet the requirements of Section 302 of the Labor Management Relations Act of 1947, as amended, 29 USC 186, the Employer will be bound by the terms, conditions and provisions of the trust agreements (copies of which will be available to the Employer upon request); and to make the contributions called for by said agreements except as specified in paragraph b below, at the rate and in the manner specified therein; to irrevocably designate as its representatives on the board of trustees of such trusts such trustees as are named in said agreements as employer-trustees, together with their successors selected in the manner provided in said agreements; and to be bound by all actions which are not in conflict with the terms of this Agreement taken by said trustees pursuant to the said agreements.

　　　　　　　　2.　　After the Employer's operation has commenced in any such area, no subsequent change in the wages, fund contributions or working conditions in such area will become effective insofar as the Employer is concerned, except to the extent that any such change in wages, fund contributions or working conditions have been agreed upon in negotiations between the Local Union having jurisdiction over the area and a recognized bargaining group of contractors in such area and are not in conflict with the terms of this Agreement.　The Employer agrees to accept the new wage rates, fund contributions and working conditions so agreed upon and pay the applicable rates retroactively to either the effective date so agreed upon or to the termination date of the previous agreement which was in effect at the commencement of the Employer's operations in such area.　Pending execution of such local agreement, there shall be no stoppage of work on the Employer's project by the Union or any lockout by the Employer by reason of any dispute over wages, fund contributions, or working conditions which may occur between the Local Union and contractors other than the Employer.

8

3.      Prior to the commencement of work in any area where no wages and working conditions have been established, the Union and the Employer will negotiate the wages, contributions and appropriate working conditions, and reduce their understanding to writing.

C.    Whenever the Employer assigns key employees or must recruit additional trained employees to a jobsite under the territorial jurisdiction of a Local Union where such employees neither reside nor are normally employed; the provisions of this Article shall apply except that:

1.    Medical hospitalization, vacation, pension and annuity, Benefit Fund contributions shall be paid into the home benefit trust funds designated by each key employee at the applicable home benefit trust fund rates.  Each employee shall file with the Employer a statement (on a form prepared by the Union) designating his/her home benefit trust funds. The Employer agrees to furnish upon request of either the Union or the Local Union, verification of the payment of said contributions.  It is understood and mutually agreed that where the jobsite local agreement specifies that a portion of the total wage package is to be paid in the form of dues check-off, BACPAC, or like funds, said payments will be made on behalf of all employees at the rate and the manner specified therein.  The International Union will serve as the clearinghouse for all fringe payments made on all employees, including local hires, company field employees, and recruited employees from outside the jobsite jurisdiction.

2.    The Employer agrees to be bound by the terms, conditions and provisions of the home benefit trust agreements (copies of which will be available to the Employer upon request); and to make the contributions called for by said agreements at the rate and in the manner specified therein; to irrevocably designate as its representatives on the board of trustees of such trusts such trustees as are named in said agreements as employer-trustees, together with their successors selected in the manner provided in said agreements; and to be bound by all actions taken by said trustees pursuant to the said agreements.  The Employer agrees to sign, upon the request of the Home Benefit Trust Funds, the standard BAC Assent of Participation covering said benefit contributions.

### ARTICLE IX
### International Masonry Institute

A.    The Contribution to the International Masonry Institute shall be the amount specified in the local union agreement, or ten cents ($.10) per hour, whichever is greater.  If no contribution is specified in the local agreement the contribution shall be ten cents per hour.

B.    The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 22 July 1970) and the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust, 6 November 1974).

## ARTICLE X
### Bonding

Prior to commencing any work covered by this Agreement, the Employer shall obtain a bond in the amount of $50,000, with a duly qualified bonding company in a form approved by the International Union, to secure payment of wages, fringe benefits and other sums due under this Agreement.

## ARTICLE XI
### Dues Check-Off

The Employer shall deduct from the wages of each employee who has signed a check-off authorization form conforming to applicable law, and transmit monthly to the applicable Local Union (or to any agency designated by said Local Union for the collection of said money), the sum for each hour paid which the Local Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of said employee's union dues to said Local Union, to its International Union, or to any other affiliate of the International Union, subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Local Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid. In addition, the Employer shall deduct from the wages of each employee who is a Union member and who has signed a voluntary Bricklayers & Allied Craftworkers Political Action Committee (BACPAC) check-off authorization form, and transmit monthly to the Treasurer of BACPAC in care of the Union (or any agency designated by the Union for collection of said money), the amount specified on the BACPAC check-off authorization form. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each employee for whom BACPAC deductions have been made and the amount deducted for each employee.

## ARTICLE XII
### Grievance Adjudication Procedure

A.  It is specifically agreed that any controversy arising during the effective period of this Agreement involving the application or interpretation of any of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Local Union or to the attention of the Local Union by the Employer within five (5) working days after the alleged violation is discovered.

B.  A grievance shall be resolved in accordance with the following procedures:

1.  The problem shall be referred to the BAC Principal Officer (or designee) of the Local Union and to the Employer's representative.

2.    If the grievance cannot be settled pursuant to paragraph 1 of this Section within five (5) working days, the grievance shall be submitted to the International Union which shall attempt to resolve the matter with the Employer.

3.    If the matter is not resolved within seven (7) days after referral to the International Union and the Employer, grievances shall be referred to the International Masonry Institute's Dispute Settlement Plan for a final and binding decision determined in accordance with the Plan's operating procedures.

4.    When a settlement has been reached at any step of this grievance procedure, such a settlement shall be final and bind all parties.

5.    Either the International Union or the Employer may waive Step 1 of the grievance procedure and go immediately to Step 2 if they so choose.

6.    The IMI Dispute Settlement Plan shall have no power to change or modify any terms of this Agreement.

C.    The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. Failure to file or process a grievance within the time limits provided shall be deemed a waiver of such grievance without prejudice, but shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

D.    In order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section B of this Article, the parties agree that such settlements shall not be precedent-setting.

E.    It is expressly understood by the parties hereto that the procedure for adjustment of grievances set out in this Article is exclusive and supersedes any other plan, method or procedure.


### ARTICLE XIII
### Subcontracting

A.    No Employer shall subcontract, assign or transfer any portion of the Work, as described in Article II of this Agreement, except to another Employer signatory to this Agreement, or Local Agreement governing employment on that project. The Union recognizes that traveling employers often have little knowledge of local subcontractors and that the Union should be available to assist its employers in their efforts to comply with this provision. Therefore, the Union and its Local Unions will, within 72 hours of the Employer's request, assist the Employer in locating qualified subcontractors.

B.    All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

## ARTICLE XIV
### Preservation of Work

In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, to protect the benefits to which employees are entitled under this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of such work and benefits, it is hereby agreed as follows:  If and when the Employer shall perform any work of the type covered by this Agreement at any construction site (i) under its own name, or (ii) under the name of another entity (whether a corporation, company, partnership, or any other business entity, including a joint venture), wherein the Employer, including its owners and stockholders (other than a corporation that is primarily engaged in industrial production), officers, directors, or partners exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

A.    A charge of violation of this Article may be filed by the Union and/or the trustees of any of the joint trust funds provided for in this Agreement, and shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes as provided in Article XII of the Agreement.  As a remedy for violations of this Article, the arbitrator provided for in Article XII is empowered, at the request of the Union and/or the trustees of the joint trust funds, to require an Employer to (a) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (b) pay into the affected contributory funds established under this Agreement or any applicable local agreement any delinquent contributions to such funds which have resulted from the violations.  Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of the Article, nor does it make the same or other remedies unavailable to the Union for violation of other sections or other articles of this Agreement, provided, however, that the Union shall not engage in strikes, picketing or other economic action to enforce or redress violations of this Article.

B.    If, as a result of violations of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section A above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

12

## ARTICLE XV
### No Strike, No Lockout

A.   It is understood and mutually agreed upon that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XII have been exhausted and then only in the event a party fails or refuses to abide by a final decision.  This Article shall not apply in those cases where the Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.

B.   There shall be no stoppage of work on the Employer's project by the Union or any lockout by the Employer by reason of any dispute over wages or working conditions which may occur between a Local Union and area contractors other than the Employer, provided that refusal by any employee to pass through a lawfully permitted picket line will not constitute a violation of this Agreement.  It is agreed, however, that in the event that either the owner or general contractor makes a decision to shut down a project during such a local work stoppage, the Employer shall be permitted to cease operations without recourse by the Union or a Local Union during the period that the project has been shut down by the owner or general contractor.  Under no circumstances, however, shall either the Employer or the Union or a Local Union make the decision or cause the decision to be made to shut down a covered project during a work stoppage in support of a dispute between the Local Union and area contractors other than the Employer.

## ARTICLE XVI
### Savings Clause

If any provision of this Agreement shall violate any applicable statute or is held invalid by any court or governmental agency having jurisdiction, then such provision shall be void and the Employer and the International Union agree that upon a ruling of invalidity they will re-negotiate immediately to replace the voided provision with one that incorporates the substance of the voided provision to the extent allowable under the law; such ruling of invalidity shall not affect the validity of the remainder of this Agreement.  Where a money item is involved and no substitute is possible, it is agreed that the benefit originally provided shall be replaced with one of equal worth.

## ARTICLE XVII
### General Understanding

A.   The parties to this Agreement agree to cooperate in meeting conditions peculiar to a job or project on which the Employer may be engaged.  They will at all times meet and confer respecting any questions or misunderstandings that may arise under the performance of this Agreement.

B.    Except for local agreements for which the Employer participates in local negotiations (i) this Agreement constitutes the entire agreement between the parties, and any local or area collective bargaining agreement which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement, and (ii) the terms and conditions set forth in local area agreements will be binding on the Employer only so long as this Agreement and any of its successors continue to bind the Employer, provided that such terms and conditions including the no strike, no lockout clause will remain in effect on any on-going project begun under this Agreement until either the project is completed or the jobsite Local area agreement is no longer in effect.

Signed on behalf of
the Employer,

Signed on behalf of

INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED
CRAFTWORKERS

Precast, LLC

By  Victor Wogen

Title  Operations Manager

DATE:  5-28-18

By  _____

Title:  SECRETARY - TREASURER

DATE:  5/30/18

14

## ADDENDUM A

## APPROVED SHIFT SCHEDULES

|  |  | Mon./Fri. Worked/Paid | | Saturday Worked/Paid | | Sun./Hol. Worked/Paid | |
|---|---|---|---|---|---|---|---|
| **ONE, 8 HOUR SHIFT OPERATION** | | | | | | | |
| 8:00 am/12:00 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 12:00 pm/12:30 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 12:30 pm/ 4:30 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| **Total Shift** | | 8 | 8 | 8 | 12 | 8 | 16 |

**TWO or THREE, 8 HOUR SHIFT OPERATIONS**

| **First Shift** | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8:00 am/12:00 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 12:00 pm/12:30 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 12:30 pm/ 4:30 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| **Total First Shift** | | 8 | 8 | 8 | 12 | 8 | 16 |
| **Second Shift** | | | | | | | |
| 4:30 pm/ 8:30 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 8:30 pm/ 9:00 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 9:00 pm/12:30 am | Work | 3.5 | 4 | 3.5 | 6 | 3.5 | 8 |
| **Total Second Shift** | | 7.5 | 8 | 7.5 | 12 | 7.5 | 16 |
| **Third Shift** | | | | | | | |
| 12:30 am/ 4:30 am | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 4:30 am/ 5:00 am | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 5:00 am/ 8:00 am | Work | 3 | 4 | 3 | 6 | 3 | 8 |
| **Total Third Shift** | | 7 | 8 | 7 | 12 | 7 | 16 |

**ADDENDUM A (continued)**

| | | Mon./Fri. Worked/Paid | | Saturday Worked/Paid | | Sun./Hol. Worked/Paid | |
|---|---|---|---|---|---|---|---|
| **10-HOUR SHIFT OPERATIONS** | | | | | | | |
| | | | | | | | |
| **First 10-Hour Shift** | | | | | | | |
| 8:00 am/12:00 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 12:00 pm/12:30 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 12:30 pm/ 6:30 pm | Work | 6 | 7 | 6 | 9 | 6 | 12 |
| | | | | | | | |
| **Total First 10-Hour Shift** | | 10 | 11 | 10 | 15 | 10 | 20 |
| | | | | | | | |
| **Second 10-Hour Shift** | | | | | | | |
| 6:30 pm/10:30 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 10:30 pm/11:00 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 11:00 pm/ 4:30 am | Work | 5.5 | 7 | 5.5 | 9 | 5.5 | 12 |
| | | | | | | | |
| **Total Second 10-Hour Shift** | | 9.5 | 11 | 9.5 | 15 | 9.5 | 20 |
| | | | | | | | |
| **12-HOUR SHIFT OPERATIONS** | | | | | | | |
| | | | | | | | |
| **First 12-Hour Shift** | | | | | | | |
| 8:00 am/12:00 pm | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 12:00 pm/12:30 pm | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 12:30 pm/ 8:00 pm | Work | 7.5 | 10 | 7.5 | 12 | 7.5 | 16 |
| | | | | | | | |
| **Total First 12 Hour Shift** | | 11.5 | 14 | 11.5 | 18 | 11.5 | 24 |
| | | | | | | | |
| **Second 12-Hour Shift** | | | | | | | |
| 8:00 pm/12:00 am | Work | 4 | 4 | 4 | 6 | 4 | 8 |
| 12:00 am/12:30 am | Lunch | 0 | 0 | 0 | 0 | 0 | 0 |
| 12:30 am/ 8:00 am | Work | 7.5 | 10 | 7.5 | 12 | 7.5 | 16 |
| | | | | | | | |
| **Total Second 12-Hour Shift** | | 11.5 | 14 | 11.5 | 18 | 11.5 | 24 |

<u>NOTE:</u> Second meal break on 12 hours shifts after (8) or (10) hours work.

**TWO or THREE SHIFT OPERATIONS**

1) Twenty-five cents (.25) shift additive for all hours worked between 4:30 pm and 12:30 am.

2) Fifty cents (.50) shift additive for all hours worked after 12:30 am.

<u>The approved schedules are the normal shifts to be worked. Other shift schedules may be utilized by mutual agreement of the Union and the Employer.</u>



CONSTRUCTION INDUSTRY FUND OF ROCKFORD
1322 EAST STATE STREET SUITE 300
ROCKFORD, IL 61104

815-399-0800

PRECAST LLC.
2948 KIRK ROAD #325
SUITE #106
AURORA, IL 60502

  8/28/2019
**PAST DUE**

10895

Page 1 of 1

Your payroll submission(s) for the following were delinquent. You have been assessed a delinquent penalty as follows:

| ACCT | FUND | PAY PERIOD | DEPOSIT DT | FUND AMT | % | PENALTY AMT | PD DT | PD AMT | WAIVE |
|------|------|-----------|-----------|----------|-----|-------------|-------|--------|-------|
| CIRBCT | CIWHR | 09/30/2018 | 12/07/2018 | $7,296.75 | 10.00 | $729.68 | 04/02/2019 | $546.90 | |
| CIRBCT | CIPN | 10/31/2018 | 02/13/2019 | $9,758.94 | 10.00 | $975.89 | | | |
| CIRBCT | CIWHR | 11/30/2018 | 02/13/2019 | $9,413.33 | 10.00 | $941.33 | | | |
| CIRBCT | CIPN | 11/30/2018 | 03/18/2019 | $6,502.38 | 10.00 | $650.24 | | | |
| CIRBCT | CIWHR | 11/30/2018 | 03/18/2019 | $6,272.10 | 10.00 | $627.21 | | | |
| CIRBCT | CIPN | 12/31/2018 | 04/10/2019 | $7,532.46 | 10.00 | $753.25 | | | |
| CIRBCT | CIWHR | 12/31/2018 | 04/10/2019 | $7,265.70 | 10.00 | $726.57 | | | |
| CIRBCT | CIPN | 03/09/2019 | 06/13/2019 | $2,339.32 | 10.00 | $233.93 | | | |
| CIRBCT | CIWHR | 01/31/2019 | 07/09/2019 | $7,079.40 | 10.00 | $707.94 | | | |
| CIRBCT | CIPN | 02/28/2019 | 08/21/2019 | $4,635.36 | 10.00 | $463.54 | | | |
| CIRBCT | CIWHR | 02/28/2019 | 08/21/2019 | $4,471.20 | 10.00 | $447.12 | | | |
| CIRBCT | CIPN | 03/31/2019 | 08/21/2019 | $3,701.85 | 10.00 | $370.19 | | | |
| CIRBCT | CIWHR | 03/31/2019 | 08/21/2019 | $3,570.75 | 10.00 | $357.08 | | | |
| CIRBCT | CIPN | 04/30/2019 | 08/21/2019 | $708.18 | 10.00 | $70.82 | | | |
| CIRBCT | CIWHR | 04/30/2019 | 08/21/2019 | $683.10 | 10.00 | $68.31 | | | |
| CIRBCT | CIPN | 05/31/2019 | 08/21/2019 | $4,925.07 | 10.00 | $492.51 | | | |
| CIRBCT | CIWHR | 05/31/2019 | 08/21/2019 | $4,750.65 | 10.00 | $475.07 | | | |

Totals            $13,700.69            $4,756.91

Total Due upon Receipt            $8,943.78

Please remit penalty due under separate cover from any hours submissions. Please attach a copy of this letter with your remittance.
Thank you.